1

2

3

4

5

6

7

8

9                    UNITED STATES DISTRICT COURT

                     CENTRAL DISTRICT OF CALIFORNIA

10

11

IRAJ SHAFIEBIEG,                    )   NO. EDCV 05-00336-MAN

12                                  )

              Plaintiff,            )

13        v.                        )   MEMORANDUM OPINION AND ORDER

                                    )

14                                  )

JO ANNE B. BARNHART,                )

15 Commissioner of the              )

Social Security Administration,     )

16                                  )

              Defendant.            )

17 _____)

18

19        Plaintiff filed a Complaint on April 27, 2005, seeking review of

20  the denial by the Social Security Commissioner ("Commissioner") of

21  Plaintiff's claim for disability insurance benefits ("DIB").  On June 9,

22  2005, the parties filed a "Consent to Proceed Before a United States

23  Magistrate Judge," pursuant to 28 U.S.C. § 636.  The parties filed a

24  Joint Stipulation ("Joint Stip.") on June 1, 2006, in which:  Plaintiff

25  seeks an order reversing the Commissioner's decision and awarding

26  benefits, or, alternatively, an order remanding the case to the

27  Commissioner for further consideration; and Defendant requests that the

28  Commissioner's decision be affirmed.

### SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff filed an application for DIB on December 6, 2001. (Administrative Record ("A.R.") 126-28.) Plaintiff claims to have been disabled since October 19, 2001, due to coronary problems, extreme fatigue, lack of energy, and depression. (A.R. 14, 126.) Plaintiff has past relevant work experience as an alarm technician. (A.R. 14.)

The Commissioner denied Plaintiff's claim for benefits initially and upon reconsideration. On July 2, 2003, and May 20, 2004, Plaintiff, who was represented by counsel, testified before Administrative Law Judge John Belcher ("ALJ"). (A.R. 24-60, 61-79.) In a September 30, 2004 decision, the ALJ found that Plaintiff was not disabled, and the Appeals Council subsequently denied Plaintiff's request for review of that decision. (A.R. 14-21, 5-8.)

### SUMMARY OF ADMINISTRATIVE DECISION

In his September 3, 2004 decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset of disability. (A.R. 20.) He found that Plaintiff's impairment, coronary artery disease, was "severe," but he did not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. (A.R. 20-21.) In addition, the ALJ found that Plaintiff "has no medically determinable mental condition or significant functional limitations due to a mental condition." The ALJ further found that Plaintiff was an "individual closely approaching advanced age," pursuant to 20 C.F.R. § 404.1563 at

2

the time of the decision, and has "more than a high school (or high school equivalent) education," pursuant to 20 C.F.R. § 404.1564. (A.R. 21.)

In describing Plaintiff's residual functional capacity, the ALJ found that Plaintiff "has the residual functional capacity for a narrow range of light work as described herein." (*Id.*) In the body of his decision, the ALJ set forth this residual functional capacity as follows:

> [Plaintiff] retains the residual functional capacity to perform a narrow range of light work. [Plaintiff] is able to lift and/or carry 10 pounds frequently and 20 pounds occasionally. Out of an 8-hour workday, [Plaintiff] is able to stand and/or walk for 2 hours, and sit for 6 hours. He should avoid concentrated exposure to extreme temperatures, wetness, humidity, fumes, odors, and dusts and he is limited to low stress jobs.[1]

(A.R. 15.)

The ALJ found that Plaintiff's allegations regarding his limitations "are not totally credible for the reasons set forth in the body of the decision." (A.R. 21.) The ALJ further found that Plaintiff could not perform his past relevant work, but could perform other work

---

[1]    "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

within the national economy.  (*Id.*)   Thus, the ALJ concluded that Plaintiff was not disabled.  (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence.  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and applies the appropriate legal standards.  <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  <u>Desrosiers v. Secretary of Health and Human Serv.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence.  *Id*. at 1041; *see also* <u>Morgan v. Commissioner of the Social Security Administration</u>, 169 F.3d

595, 599 (9th Cir. 1999); <u>Flaten v. Secretary</u>, 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges four disputed issues. <u>First</u>, Plaintiff contends that the ALJ improperly rejected the May 10, 2004 opinion rendered by Dr. Stanley Neuman, his treating physician, in assessing Plaintiff's residual functional capacity. (Joint Stip. at 5-11, 14-16.) <u>Second</u>, Plaintiff contends that the ALJ improperly evaluated his claimed limitations and symptoms. (*Id*. at 16-19, 21-22.) <u>Third</u>, Plaintiff contends that the ALJ did not consider properly the lay witness testimony provided by his wife, Dorina Shafeibieg. (*Id*. at 22-24.) <u>Fourth</u>, Plaintiff contends that the ALJ improperly determined that there were a significant number of jobs that Plaintiff could perform in the national economy based on the testimony of the vocational expert. (*Id*. at 24-25, 28.)

**A.   <u>The ALJ Properly Considered Dr. Neuman's May 10, 2004 Opinion In Determining Plaintiff's Residual Functional Capacity</u>.**

Ordinarily, the opinions of a treating physician should be given great weight, if not controlling weight. *See* Social Security Ruling 96-2p; *see also* <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)(opinions of treating physicians are entitled to great deference). When the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence

5

in the record.  <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995); *see also* <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)(ALJ erred by rejecting the treating doctors' opinions and relying upon Social Security examiners' opinions in finding that claimant's chronic fatigue syndrome had not rendered her disabled).  Broad and vague reasons will not suffice for rejecting the treating physician's opinion.  <u>McAllister v. Sullivan</u>, 888 F.2d 599, 602 (9th Cir. 1989).

In discussing Dr. Neuman's opinion, the ALJ stated:

> Dr. Neuman, [Plaintiff's] treating cardiologist, completed a cardiac residual functional capacity Questionnaire on May 10, 2004, indicating he has been treating [Plaintiff] for the past two or three years for angina, coronary artery disease class I and II, and hyperlipidemia, which was stable (Exhibit 18F).  Dr. Neuman reported [Plaintiff] has symptoms of shortness of breath, fatigue, weakness, and sweatiness, but [Plaintiff's] anginal pain was infrequent with pain in the back with involvement of the upper extremities.  Dr. Neuman noted [Plaintiff] was limited to low stress jobs due to extreme diaphoresis and some shortness of breath with increased stress.  He also noted that emotional factors did not contribute to the severity of his subjective symptoms and his cardiac symptoms seldom interfered with [Plaintiff's] concentration and attention.  [Plaintiff] was able to lift and/or carry 10 pounds frequently and 20 pounds occasionally.  Out of an 8-hour workday, Dr. Neuman asserted [Plaintiff] was able to sit for 6 hours and stand and/or walk for 2 hours with

6

normal breaks.   He should avoid concentrated exposure to extreme temperatures, high humidity, wetness, fumes, odors, dusts, and gases.   Dr. Neuman indicated [Plaintiff] would be absent [from work] one day per month due to his impairments, symptoms, and limitations.   The opinion of [this] treating physician, Dr. Neuman, is well supported by clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.   Per Social Security Ruling 96-2p, controlling weight is given to the treating physician's opinion.

(A.R. 17-18.)

Plaintiff contends that the ALJ improperly rejected Dr. Neuman's May 10, 2004 opinion in determining his residual functional capacity. (Joint Stip. at 5-6.)   Plaintiff further contends that Dr. Neuman's finding that he can stand for only two out of eight hours precludes him from performing a full range of "light" work and essentially renders him capable of performing only "sedentary" work.   (*Id*. at 6-7.)   In addition, Plaintiff contends that the ALJ's residual functional capacity assessment fails to account sufficiently for limitations arising from his fatigue.   (*Id*. at 11.)

In his May 10, 2004 Cardiac Residual Functional Capacity Assessment, Dr. Neuman found that Plaintiff:   is capable of low stress jobs; would need to stand or walk about two hours and sit at least six hours in an eight-hour workday; could lift up to ten pounds frequently and up to 20 pounds occasionally; and would need to avoid concentrated

exposure to extreme heat and cold, high humidity, wetness, fumes, odors, dust, and gases.  (A.R. 438-40.)  Dr. Neuman further found that Plaintiff's impairments or treatments would interfere with his ability to work less than once a month.  (A.R. 440.)

The ALJ's residual functional capacity finding -- that Plaintiff can perform work at the "light" exertional level; is able to stand and/or walk for two hours and sit for six hours in an eight-hour day; should avoid concentrated exposure to extreme temperatures, wetness, humidity, fumes, odors, and dust; and is limited to low stress jobs -- is entirely consistent with Dr. Neuman's May 10, 2004 assessment and, therefore, does not constitute a rejection of it.  *See* Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996)(ALJ did not improperly reject treating doctor's opinion, because it was consistent with the ALJ's determination that the claimant was capable of performing a "wide range of light work").

Despite Plaintiff's contention that Dr. Neuman's assessment essentially limited him to work at the "sedentary" level, the plain terms of Dr. Neuman's assessment limited Plaintiff to a narrow range of "light" work, as the ALJ found.[2]  Furthermore, Dr. Neuman expressly accounted for Plaintiff's claimed symptoms (A.R. 437 -- citing fatigue, shortness of breath, weakness, and sweatiness) and relied upon objective testing (A.R. 437, citing November 10, 2003 cardiac catheter report (A.R. 441) and December 3, 2003 MUGA report noting normal left

---

[2]    "Sedentary work" involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. §§ 404.1567, 416.967.

ventricular function (A.R. 442-43)), in rendering his residual functional capacity finding.[3] *See* Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001)("A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record.").

Accordingly, Plaintiff's argument that the ALJ improperly rejected Dr. Neuman's May 10, 2004 opinion is without merit.

**B.    The ALJ Improperly Assessed The Symptoms And Limitations Alleged By Plaintiff And His Wife.**

The Court will give great weight to the ALJ's credibility assessment. Anderson v. Sullivan, 914 F.2d 1121, 1124 (9th Cir. 1990); Brawner v. Secretary, 839 F.2d 432, 433 (9th Cir. 1988)(recognizing that the ALJ's credibility determination is to be given great weight when supported specifically). In rendering a credibility evaluation, the ALJ may consider: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen, 80 F.3d at 1284.

---

[3]    To the extent that Plaintiff contends the ALJ should have found limitations arising from his fatigue in excess of those noted in Dr. Neuman's May 10, 2004 report based on his claimed subjective limitations and symptoms, the Court addresses this argument in the following section.

Unless the evidence suggests affirmatively that a claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's excess pain or symptom testimony. <u>Dodrill v. Shalala</u>, 12 F.3d 915, 918 (9th Cir. 1993).  When an ALJ's decision rests on a negative credibility evaluation, "the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." <u>Cequerra v. Secretary</u>, 933 F.2d 735, 738 (9th Cir. 1991); <u>Orteza v. Shalala</u>, 50 F.3d 748, 750 (9th Cir. 1995)(the ALJ's findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony").

"Lay testimony as to a claimant's *symptoms* is competent evidence that an ALJ *must* take into account, unless he or she expressly determines to disregard such testimony and *gives reasons germane to each witness for doing so.*" <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001)(emphasis added).  *See also* <u>Nguyen v. Chater</u>, 100 F.3d 1462, 1467 (9th Cir. 1996); <u>Dodrill v. Shalala</u>, 12 F.3d 915, 919 (9th Cir. 1993). An ALJ may "properly discount lay testimony that conflict[s] with the available medical evidence" (<u>Vincent v. Heckler</u>, 739 F.2d 1393, 1395 (9th Cir. 1984)), particularly, where, as in <u>Vincent</u>, "lay witnesses [are] making medical *diagnoses*," as "[s]uch medical diagnoses are beyond the competence of lay witnesses and therefore do not constitute competent evidence." <u>Nguyen</u>, 100 F.3d at 1467 (original emphasis). When, however, a lay witness testifies about a claimant's *symptoms*, which may affect the claimant's ability to work, such testimony *is* competent evidence and therefore *cannot* be disregarded without comment. *Id*.

In rejecting the credibility of the testimony of Plaintiff and his wife regarding Plaintiff's alleged symptoms and limitations, the ALJ stated:

> In all, a residual functional capacity for a narrow range of light work is warranted in this case. In reaching this conclusion, I have considered [Plaintiff's] own subjective allegations and have found them generally credible to the extent that the objective signs, symptoms, and findings support these complaints and they are not inconsistent with the other evidence. However, the severity of these allegations are [sic] not commensurate with a finding of disability based on the listings and do [sic] not support any limitations that are more restrictive than what is already described herein. While it is reasonable to expect his condition would result in a certain amount of pain and functional limitations, the degree in which [Plaintiff] alleges he is limited is not fully supported by the clinical evidence.

> In reaching the conclusions regarding [Plaintiff's] condition and functional capacity, I have also given consideration to [Plaintiff's] subjective complaints and allegations, but I do not find that [Plaintiff] has provided any information sufficiently credible to warrant the assessment of more restrictive limitations. [Plaintiff's] medical treatment has been routine and conservative. Treatment records reflect that his hyperlipidemia and coronary

artery disease are stable and controlled with medication. [Plaintiff] does not require nitroglycerin and is no longer on beta-blockers.[4] [Plaintiff's] remaining heart function does not require such a sedentary lifestyle [and Plaintiff] has chosen to retain an unhealthy lifestyle.  He continues to smoke and does not exercise as regularly and as much as his doctor has recommended.  Further he states he walks for 5 to 10 minutes at a very slow rate, but his stress test indicates he has moderate exercise tolerance.  [Plaintiff's] wife testified he can still walk around the neighborhood, although he sweats a lot and he is short of breath.  She also said [Plaintiff] no longer goes to movies and no longer does gardening or yard work.  He is moody, not active, and gets upset and frustrated easily.  She testified she was not aware his doctor had told him to do strengthening exercises, and she also stated he walks 15 to 20 minutes at a time, which is about double what [Plaintiff] said he could do.  [Plaintiff's] wife testified she helps [Plaintiff] dress sometimes and she believes he has memory problems.  However, medical records indicate that she was frequently present at [Plaintiff's] examinations and the attending physician noted in his notes that he explained to [Plaintiff] and his wife regarding patient education, especially abstinence from smoking (Exhibit 17F, pages 3, 9, 47, and 48.) [Plaintiff's] wife's statements in the record at Exhibit 4E indicate [Plaintiff] was able to

---

[4]     The Court notes that October 28, 2003 treatment notes of Dr. Neuman state that "Fatigue plagues [Plaintiff] and hence he is not on a Beta Blocker."  (A.R. 420.)

do household chores, cook, drive a car, take care of the children and get them off to school, and visit with relatives (Exhibit 4E). I find her testimony was interesting, somewhat self-serving in support of her husband, but not medically probative. Furthermore, I find [Plaintiff] obviously has downplayed his doctor's instructions and exaggerated his inability to perform certain activities. Whether this is intentional or unintentional, I believe it does represent a secondary gain mentality in that his wife and family expect less of him. His loss of concentration is not demonstrated by psychological evaluation or by his behavior at either hearing. I think any psychological malaise is minor and non-severe and does not result in the need for psychologically based functional limitations. [Plaintiff] did not report any side effects from taking Wellbutrin. No side effects are reported from other medications (Exhibit 10E). [Plaintiff] obviously bases his disability on his inability to perform his last job, which he described as "very demanding." Obviously, [Plaintiff] needs a less emotionally demanding and physically demanding job. [Plaintiff's] statements in the record indicate that he suffered from fatigue and that he had difficulties sleeping (Exhibit 5E). However, [Plaintiff] also reported he did not take any medication to sleep (Ibid.). He also noted that two to five times per week he barbeques chicken and that he was able to complete all types of household chores, but he would get tired easily (Exhibit 5E). [Plaintiff's] statements at the consultative examinations at Exhibit 4F and 16F indicate he was able to do household

13

chores, go shopping with his wife, do light cooking and help his children with their homework.  He was able to dress and bathe himself, handle all his own affairs, and get along well with others (Exhibit 4F and 16F).  I find [Plaintiff's] daily activities including household chores, shopping, and self-care skills reflect a physically active and healthy lifestyle.  All of the aforementioned factors are inconsistent with an incapacitating or debilitating condition at any time since [Plaintiff's] alleged onset date.  As such, I cannot find that [Plaintiff's] statements are sufficiently credible to warrant the establishment of more restrictive limitations.  Rather, I reiterate the determination that [Plaintiff] remains capable of performing a narrow range of light work as indicated above.

(A.R. 18-19.)

Plaintiff contends that the ALJ failed to apply and consider the factors set forth in Social Security Ruling 96-7p. (Joint Stip. at 17-18.)  Plaintiff further contends that the ALJ improperly based his credibility rejection on Plaintiff's daily activities. (Joint Stip. at 18.)  With respect to the testimony provided by his wife, Plaintiff contends that the reasons provided by the ALJ for rejecting her testimony were not sufficiently "germane" in accordance with the applicable law.  (Joint Stip. at 22.)

As the ALJ aptly noted, Plaintiff's failure to comply with his recommended treatment by continuing to smoke constitutes an appropriate

14

basis for disregarding his claimed limitations and symptoms.[5]  *See* 20
C.F.R. § 404.1530b(B)(providing that "[i]f you do not follow the
prescribed treatment without a good reason, we will not find you
disabled"); <u>Choate v. Barnhart</u>, 457 F.3d 865, 872 (8th Cir. 2006)(ALJ
properly rejected the claimant's allegations of disabling symptoms based
on his failure to comply with his treating physician's directions,
including repeated advice to stop smoking); *see also* <u>Smolen</u>, 80 F.3d at
1284 (ALJ may consider a claimant's compliance with her prescribed
treatment in assessing the severity of a claimant's symptoms); <u>Lewis</u>,
236 F.3d at 513-14 (ALJ properly rejected a treating physician's letter
that the claimant's seizures had not been fully controlled where other
evidence in the record suggested that the claimant had not complied
consistently with his treatment regime).

    The ALJ's credibility rejection, insofar as it pertains to
Plaintiff's daily activities, is, however, questionable.  The ALJ makes
no effort to show how Plaintiff's daily activities translate to work
activities to be performed within an eight-hour work-day on a continuous
basis for a 40-hour workweek.  *See* <u>Gonzalez v. Sullivan</u>, 914 F.2d 1197,
1201 (9th Cir. 1990)(daily activities may not be relied upon to support
an adverse credibility decision where those activities do not affect the
claimant's ability to perform appropriate work activities on an ongoing
and daily basis); <u>Smolen</u>, 80 F.3d at 1283 n.7 ("many home activities may
not be easily transferable to a work environment where it might be

---

[5]     (A.R. 35 -- Plaintiff's testimony at the July 2, 2003 hearing
that he "can't quit" smoking; A.R. 271 -- August 29, 2001 Stress Echo
report noting "good functional capacity" and describing the changes
before, during, and after the test as "none of significance"; A.R. 298
-- March 19, 2001 Stress Test noting "fair exercise tolerance," "no
arrhythmia," and "no chest pain.")

impossible to rest periodically or take medication."). <u>Reddick</u>, 157 F.3d at 722 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."); <u>Vertigan v. Halter</u>, 260 F.3d 1044, 1050 (9th Cir. 2001)("One does not need to be 'utterly incapacitated' in order to be disabled," and the ability to perform normal daily activities outside of the work setting does not detract from a claimant's "overall credibility.").

Moreover, even though the ALJ found that Plaintiff had no "severe" mental impairments, it is not clear that the ALJ properly considered possible limitations arising from Plaintiff's claimed anxiety and depression.  For instance, Plaintiff claims that he has not complied with his doctor's recommendations to exercise, because he is afraid of having another heart attack, suggesting that he may have additional limitations arising from his anxiety.  (A.R. 36-40 -- Plaintiff's testimony at the July 2, 2003 hearing that he does not try to walk or exercise in accordance with his physicians' advice, because he "doesn't even want to get out of bed" sometimes and he is afraid of having another heart attack.)  In addition, Plaintiff told Dr. Linda Smith, a psychiatrist who examined Plaintiff at the request of the Commissioner, that he was taking Prozac, an anti-depressant medication, for his depression.  (A.R. 286.)  These statements show that Plaintiff may have limitations arising from his anxiety and depression -- even if those claimed impairments are not "severe" -- which the ALJ must consider in determining Plaintiff's residual functional capacity.  *See* 20 C.F.R. §§ 404.1545(e), 416.945(e)(When assessing a claimant's residual functional capacity finding, an ALJ must "consider the limiting effects of all the claimant's impairment(s), even those that are not severe.")

16

With respect to the statements made by Plaintiff's wife, the ALJ found that her testimony regarding Plaintiff's disabling **physical** impairments was at odds with the medical records (including records of examinations at which she was present (*See, e.g.*, A.R. 420 -- Dr. Neuman's October 28, 2003 outpatient progress report, A.R. 434 -- Dr. Neuman's April 16, 2003 outpatient progress report)) and, therefore, was not probative. *See* <u>Vincent</u>, 739 F.2d at 1395 (ALJ may discount lay witness testimony that conflicts with the medical evidence). However, as with Plaintiff's testimony regarding his depression and anxiety, this Court cannot say that the ALJ did not err in, essentially, rejecting her testimony regarding Plaintiff's mental limitations and fatigue without providing specific and germane reasons for doing so. *See* <u>Lewis</u>, 236 F.3d at 511.

Further, under <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1055 (9th Cir. 2006), a reviewing court cannot find harmless error when an ALJ fails to adequately address lay witness testimony, "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." The Court finds that the rigorous standard imposed by <u>Stout</u> is not met here, and therefore, the ALJ's failure to address the testimony of Plaintiff's wife adequately cannot simply be dismissed as harmless error.

Accordingly, the correctness of ALJ's finding as to the credibility of the testimony provided by Plaintiff and his wife regarding his claimed limitations and symptoms is questionable and should be reviewed on remand.

///

17

**C.**  **Because The ALJ's Hypothetical Question Did Not Include The Entirety Of Plaintiff's Limitations, The ALJ's Reliance On The Vocational Expert's Testimony Constitutes Error.**

"If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the 'expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" <u>Matthews v. Shalala</u>, 10 F.3d 678, 681 (9th Cir. 1993) (quoting <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 850 (9th Cir. 1991)). Unless the vocational expert's testimony is not based on a claimant's complete set of limitations, then it has no evidentiary value. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422-24 (9th Cir. 1987).

Here, the ALJ asked the vocational expert the following hypothetical question:

. . . [Assume] a 51-year old individual, college education, and work experience as outlined by yourself in your report and through the testimony today.  The person would have the following limitations: No lifting or carrying more than 20 pounds occasionally, 10 pounds frequently, with pushing and pulling consistent with the lifting carrying limitations.  The person could stand and walk for [two] hours out of an eight-hour day and could sit for eight hours out of an eight-hour day. . . .  [This person must] avoid concentrated exposure to extreme cold, heat, humidity, wetness, fumes, odors, dust and gases.  And should be [limited to working in environments] in the low-stress nature.

(A.R. 71-72.)  The vocational expert responded that Plaintiff could not perform his past relevant work as an alarm technician or sales representative with jewelry, but could perform other work in the national economy, such as a bench assembler, office helper, and small products assembler.  (A.R. 72-74.)

In finding that Plaintiff could perform other work in the national economy based on the vocational expert's testimony, the ALJ explained:

> [Plaintiff] has past relevant work as an alarm technician, which is considered a skilled occupation generally performed at the medium level of exertion, [and] was performed by [Plaintiff] at the light exertional level.  Sandra Fioretti, a vocational expert, testified at the hearing held on May 20, 2004, that [Plaintiff] also has self-employed past relevant work in costume jewelry wholesale, sales, and import/export, which is considered a skilled occupation generally performed at the light level of exertion, [and] was performed by [Plaintiff] at the medium level of exertion. Based upon the residual functional limitations set forth in this decision, the vocational expert testified that [Plaintiff] can no longer perform any of his past relevant work.  The vocational expert further testified that [Plaintiff] does not have skills that are transferable to any other position within [Plaintiff's] functional capacity.  I accept the testimony of the vocational expert and [find] that [Plaintiff] cannot perform any of his past relevant work.

1 (A.R. 19.)

2

3     Plaintiff generally contends that "[t]he ALJ did not properly rely
4 on the vocational expert's testimony to determine there would be a
5 significant number of jobs [he could perform]." (Joint Stip. at 24.)
6 Plaintiff further contends that the hypothetical question is in error,
7 because he has no transferable skills. (Joint Stip. at 25.)    In
8 addition, Plaintiff contends that the hypothetical question is in error
9 because it limits Plaintiff to work at the "light" level, instead of the
10 "sedentary" level. (Joint Stip. at 28.)

11

12     Here, the ALJ's hypothetical question is at odds with his residual
13 functional capacity assessment, as it fails to limit Plaintiff to
14 sitting six hours (rather than eight hours) in an eight-hour work-day.
15 Furthermore, the ALJ's hypothetical question does not refer to
16 Plaintiff's likely monthly absences. (*See* A.R. 18, 440.)  Therefore,
17 the vocational expert's testimony that Plaintiff can perform other work
18 in the national economy has no evidentiary value, because it was not
19 based on a complete and accurate hypothetical. Embrey, 849 F.2d at 422-
20 24.

21

22     Accordingly, because the Court cannot determine whether the ALJ's
23 finding that Plaintiff can perform other work in the national economy is
24 based on substantial evidence, his finding constitutes reversible error.
25 ///
26 ///
27 ///
28 ///

**D.   <u>Remand Is Necessary</u>.**

      In view of the errors in the credibility finding, the inadequacy of the hypothetical question posed to the vocational expert, and the need for further vocational expert testimony to determine what work, if any, Plaintiff can perform in the national economy, this action must be remanded.   *See, e.g.,* <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1104 (9th Cir. 1999)(remanding case to the Commissioner in order to obtain testimony from a vocational expert based upon the claimant's non-exertional limitations); <u>McAllister v. Sullivan</u>, 888 F.2d 599, 603 (9th Cir. 1989)(remand appropriate to remedy defects in the record).

**CONCLUSION**

      Accordingly, for the reasons stated above, the denial of benefits is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.   Judgment shall be entered reversing the decision of the Commissioner, and remanding the matter for further administrative action consistent with this Memorandum Opinion and Order.

///
///
///
///
///
///
///
///

21

1     IT IS FURTHER ORDERED that the Clerk of the Court shall serve

2 copies of this Memorandum Opinion and Order and the Judgment on counsel

3 for Plaintiff and for Defendant.

4

5     **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6

7 DATED: September 29, 2006

8                            /s/

                         MARGARET A. NAGLE

9                        UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28